JOHNSON, Respondent, vs. SUPERIOR RAPID TRANSIT RAILWAY
COMPANY, Appellant.

*October 1 — October 22, 1895.*

*Street railways: Injury to person crossing track: Contributory negli-
gence: Care of driver not imputed to passenger: Credibility of wit-
nesses: Jurors' own knowledge: Instructions to jury.*

1. In an action for personal injuries received in a collision between a
street car and a phaeton in which plaintiff was crossing the track,
it was error to charge that, even if the plaintiff was chargeable

91　233
f91　562
91　233
101　151
91　233
108　347
f108　611
91　　233
110　²158
53 LRA　626

with a lack of ordinary care, still she should recover if "the defendant's motorman saw the plaintiff approaching the track unconscious of his coming, and he then, seeing her in that attitude, did not exercise *ordinary* care for her safety."

2. If the plaintiff in such case, by the exercise of ordinary care on her own part, might have avoided the injury, she cannot recover, even if the driver of the phaeton in which she was riding did exercise such care.

3. An instruction to the effect that in determining the credibility of witnesses each juror should take into consideration *his own knowledge* of their character, followed by the remark, "My observation is that pretty good persons sometimes lie, and that pretty bad persons sometimes tell the truth," was erroneous, and the error was not cured by a subsequent instruction that nothing was to be found by conjecture, but that the verdict must be based upon evidence and facts inferable from the proofs.

4. The charge in this action for personal injuries is criticised as containing some things well calculated to excite feeling and prejudice in the jury and to lead them away from the real issue.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Reversed.*

North Third street, which is sixty feet between the curb lines, runs east and west in West Superior. The defendant owns and operates an electric railway along that street. On September 1, 1893, between 4 and 5 o'clock in the afternoon, the plaintiff was riding west, with Mrs. Jones and Mrs. Little, in a covered phaeton, with the top up and no curtains on the sides, upon the south side of the track on said street, between Lamborn and Tower avenues. Mrs. Jones was driving, and an experienced driver, and sitting on the right. Mrs. Little was sitting in the middle, and the plaintiff on the left. A sprinkling wagon was approaching from the west, and to avoid that Mrs. Jones attempted to cross the defendant's track by turning and going diagonally in a northwesterly direction, at an angle of forty-five degrees with the street. After going far enough in that direction for the hind wheels of the phaeton to be upon the north track, the phaeton was struck by one of the defendant's cars

going west and coming upon the phaeton from the rear. Each of the three ladies was badly injured, and each has brought a separate action for the damages thus sustained. The answer alleges contributory negligence on the part of the plaintiff.

At the close of the trial the jury returned a general verdict in favor of the plaintiff for the sum of $1,620, and also a special verdict to the effect (1) that the defendant's street cars, at the time mentioned, collided with the carriage in which the plaintiff was riding; (2) that the plaintiff was riding, as the guest and for pleasure, with Mrs. Jones, who was driving the horse at the time of the accident; (3) that there was a want of ordinary care on the part of the defendant's servants in charge of the car at the time; (4) that such want of ordinary care was the approximate cause of the injury; (5) that the person who was driving the horse did not fail to exercise ordinary care, at the time of the accident, in respect to any car that they had good reason to believe might probably be approaching from behind; (6) that there was not any want of ordinary care on the part of the person who was driving the horse that contributed to the occurrence complained of; (7) that $1,620 will compensate the plaintiff for the injuries to her person. From the judgment entered thereon in favor of the plaintiff for the sum mentioned as damages and costs, the defendant appeals.

For the appellant there was a brief by *Ross, Dwyer & Hanitch,* and oral argument by *W. D. Dwyer.* To the point that if both parties were guilty of a want of ordinary care, and if by this lack of ordinary care on the part of both the plaintiff has been injured, she cannot recover, they cited *Hicks v. Citizens' R. Co.* 124 Mo. 115; *Blakeslee v. Consolidated St. R. Co.* 63 N. W. Rep. 401; *Fritz v. Detroit C. St. R. Co.* 62 id. 1007; *Little v. S. R. T. R. Co.* 88 Wis. 402; *Alaska Treadwell G. M. Co. v. Whelan,* 64 Fed. Rep. 462; Beach, Contrib. Neg. § 9.

For the respondent there was a brief by *McHugh, Lyons & McIntosh,* and oral argument by *T. E. Lyons.*

Cassoday, C. J.   1. The case of Mrs. Little, mentioned in the foregoing statement, was before this court, and reversed for errors.  *Little v. Superior R. T. R. Co.* 88 Wis. 402.  It was there, in effect, held that the portion of the charge to the effect that the plaintiff could recover, even in a case where both parties were guilty of a want of ordinary care, was error.  The same error is present in this case, where the court charged the jury to the effect that, even if the plaintiff was chargeable with a lack of ordinary care, still the plaintiff should recover, if "the defendant's motorman saw the plaintiff approaching the track unconscious of his coming, and he then, seeing her in that attitude, did not exercise *ordinary* care for her safety;" and this was put on the ground that the motorman's negligence, in that event, "was, so to speak, supervening.  It is, in a sense, negligence after negligence, and it is the proximate cause of the injury."  Such portions of the charge were substantial repetitions of what was contained in a former portion of the charge.  True, the facts detailed in the clause of the charge quoted might possibly justify the jury in finding that the motorman was guilty of gross negligence or recklessness; and the court followed the portion of the charge mentioned by charging that "if the plaintiff was chargeable with lack of ordinary care, and still the motorman is chargeable with reckless negligence, and that reckless negligence was the proximate cause of the injury, still your verdict should be for the plaintiff."

2. The court also charged the jury: "In passing upon the question of the credibility of witnesses, you will always consider, of course, any motives that a witness may have for testifying the way he does.  The temptations to perjury,— you should always consider that.  You will always consider, of course, the character of the witnesses, *so far as you know*

*it*, as bearing upon the question whether a witness would be truthful and reliable or not. *My observation is that pretty good persons sometimes lie, and that pretty bad persons sometimes tell the truth.*" In determining the credibility of the several witnesses, each juryman was thus directed to take into consideration his *own knowledge* of the witness or witnesses; and, in addition to that, the judge instructed the jury as to what his own observations had been in regard to the truthfulness of good and bad persons. As this court has repeatedly held: "Every party to an action at law in this state has a right to insist upon a verdict or finding based upon the law and the evidence in the case, and not, in the absence of evidence, upon mere inference, conjecture, *and personal experience.*" *Sherman v. Menominee R. L. Co.* 77 Wis. 22; *Little v. Superior R. T. R. Co.* 88 Wis. 408. The error mentioned was not cured by the court telling the jury, in effect, that nothing was to be found " by conjecture," but that their verdict "must be based upon evidence" and facts inferable from the proofs.

3. On the subject of contributory negligence, the court charged the jury to the effect that the plaintiff had the right to rely upon Mrs. Jones, who was driving the horse, to exercise ordinary care to avoid the danger; that if Mrs. Jones looked, that was enough to answer the purpose; that both did not have to look; that they must regard the plaintiff " just exactly as if she had hold of the reins herself and had done just as Mrs. Jones did." We cannot sanction such rulings. It was equivalent to saying to the jury that, even though the plaintiff might have avoided the injury by the exercise of ordinary care, still she might recover if Mrs. Jones exercised ordinary care. We are not aware of any such doctrine of imputed care. The jury did not specifically find that the plaintiff was free from contributory negligence. The answer of the jury to the fifth question is merely to the effect that Mrs. Jones did not fail to exercise ordinary care

Johnson vs. Superior Rapid Transit R. Co.

as to any car she had good reason to believe to be then approaching. In this same connection the court said to the jury, "I don't think she [the plaintiff] claims to have looked." If this was true,— and it would seem that it was,— then it became the duty of the court to nonsuit the plaintiff or direct a verdict in favor of the defendant.

The charge is very lengthy. Numerous exceptions are taken to it. It contains some things well calculated to excite feeling and prejudice in the jury, and to lead them away from the real issue. Only a few of them are here referred to, as, for instance: "I have thought of this case a good deal, gentlemen. *Here is some pretty strong wrong somewhere.*" The court then charges at considerable length upon personal injury cases generally, as follows: "I notice, every time we come to draw a panel, the question is asked, 'Have you any prejudice against personal injury actions?' I hope not, gentlemen. I hope not. It is an unfortunate state of facts, if we have got to swear a person can't come into court and have a fair show on a personal injury action. That is a bad state, if that is true, and it makes me out of patience, almost, to have it assumed that may be true. However, personal injury actions are many of them humbugs,— made up. You want to search them as you do any other action,— sift the wheat from the chaff; but don't brace up and say here: 'It won't do to give verdicts in personal injury actions. It will only encourage people.' Never say that. If you feel there are a good many humbug actions, why, search, search the evidence. That's right. But don't brace up against it. If anybody here has suffered an injury, they have a right to come into court. We have time for them, and a sufficient punishment on them,— to put the costs on them and send them out without a verdict, if they are not entitled to one. I am not going to lose my right to come into court and have my wrongs redressed because my neighbor may have come into court when he had no business to." As was said by this

court in another case, so we feel called upon to say of the lengthy charge in this case: "An opportunity for elegant discourse is always tempting to genius and ability. But while some circumstances invite, others repel, the indulgence. To be apt, the expression must not only be accurate but appropriate. A strict adherence to the case in hand is one of the highest qualities of juridical discussion. Such discussion is necessarily concise, direct, and restricted, rather than ornate. It is, moreover, cold, logical, pointed, and without superfluity." *Bradley v. Cramer*, 66 Wis. 300.

*By the Court.*— The judgment of the superior court of Douglas county is reversed, and the cause is remanded for a new trial.

Injuries by street-car collisions with vehicles or horses are the subject of annotation to *Hicks v. Citizens' R. Co.* (124 Mo. 115) in 25 L. R. A. 508.— REP.

